UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JASHAR BANKS,

                              Plaintiff,

            -against-

GND LLC d/b/a BLACK DIAMOND
BILLIARDS,

                              Defendant.

Civil Action No.: 2:26-cv-00344

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, JASHAR BANKS ("Mr. Banks" or "Plaintiff"), by and through his counsel, Vincent Miletti, Esq., of Miletti Law, P.C., hereby files this Complaint and sues GND LLC d/b/a BLACK DIAMOND BILLIARDS ("Defendant" or "Black Diamond Billiards"), a domestic limited liability company, for: (a) injunctive relief; (b) compensatory relief; (c) punitive damages; and (d) attorney's fees and costs pursuant to 42 U.S.C. § 12181 et seq., of the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and their implementing regulations, in connection with accessibility barriers and discriminatory treatment at properties owned and/or managed by Defendant, and alleges as follows:

## INTRODUCTION

1.     This action is brought to redress discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12181 et seq., and its implementing regulations, 28 C.F.R. Part 36. Plaintiff also sets forth claims for unlawful discrimination under the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. 10:5-1 et seq., N.J. Admin. Code § 13:13-4 et seq., and related New Jersey state and local law.

## JURISDICTION AND VENUE

2.     While it has jurisdiction over the ADA claims pursuant to 28 U.S.C. §§ 1331 and 1343 and pursuant to 28 U.S.C. § 1367(a), this Court also has supplemental jurisdiction over Plaintiff's claims brought under the laws of the State of New Jersey.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b). While the acts of discrimination alleged in this Complaint occurred in this District, the public accommodation, which is the subject of this action, is situated in this District.

## PARTIES

4.      Plaintiff is a resident of the State of New Jersey.

5.      Plaintiff has a physical disability that requires him to utilize a manual wheelchair and rely on a service dog for assistance. His impairment substantially limits major life activities, including walking, standing, performing manual tasks, and navigating independently. Therefore, Mr. Banks has a physical disability within the meaning of the ADA (42 U.S.C. § 12102[1]) and the laws of the State of New Jersey.

6.      Plaintiff has, at all relevant times, suffered from a "qualified disability" under the ADA because of his physical disability, the use of a wheelchair for mobility, and his reliance on a service dog for assistance.

7.      Defendant, GND LLC d/b/a BLACK DIAMOND BILLIARDS, owns and operates the billiards establishment located at 1767 US-22, Union, New Jersey 07083 (the "Property").

8.      The Black Diamond Billiards facility is a place of public accommodation within the meaning of Title III of the ADA (42 U.S.C. § 12181[7]), and the regulations promulgated thereunder, as well as a place of public accommodation within the meaning of NJLAD, N.J.S.A. 10:5-5.

9.      However, Black Diamond Billiards' facilities and policies are not fully accessible to, and independently usable by, Plaintiff and individuals who use wheelchairs and/or service animals.

10.      While Defendant has management policies regarding the operation of its facility, those policies are discriminatory, and Defendant's facility continues to be inaccessible

to, and not independently usable by, Plaintiff and individuals who use wheelchairs and/or service animals.

11.    Defendant has engaged in a pattern and practice of continuous discrimination by establishing, operating, and maintaining inaccessible commercial premises and discriminatory policies toward individuals who use wheelchairs and/or service animals.

## STATEMENT OF FACTS

### I.    *BACKGROUND FACTS*

12.    Mr. Banks uses a wheelchair for mobility and relies on a service dog to assist with his disability. Despite his physical disability, he is a pillar of inspiration in his community. Mr. Banks works as a crisis counselor for the 988 Suicide & Crisis Lifeline and runs a nonprofit organization dedicated to providing adaptive sports opportunities for individuals with cognitive and physical disabilities. Mr. Banks also serves as a youth counselor and volunteers with organizations, such as Hands of Hope Food Drive and the Christopher & Dana Reeve Foundation. This fall, Mr. Banks is continuing his education at Rutgers University, pursuing a master's degree and licensure in Clinical Social Work to become a certified mental health counselor. Beyond his professional and academic commitments, Mr. Banks leads a vibrant social life and enjoys participating in adaptive sports, playing billiards, and eating out with friends and family at local establishments in his community.

13.    On an unspecified date in late 2023 or early 2024, Mr. Banks was a patron at Black Diamond Billiards. The owner of Black Diamond Billiards approached Mr. Banks, claiming he was interfering with other patrons and negatively affecting his business. Specifically, the owner stated that players at an adjacent table had complained that his wheelchair was preventing them from playing billiards. The owner then demanded that Mr. Banks move to a table further away from his friends, a place that would not have best met his needs and would otherwise result in an experience less satisfactory than that of an average

patron.

14.      Mr. Banks directly inquired with players from nearby tables, who confirmed they had not complained, and brought this to the owner's attention. The owner then threatened to call the police to remove him from the Property if he did not comply. Mr. Banks attempted to explain that the request did not seem reasonable and that he did not wish to move without a valid cause, but the owner proceeded to call the police.

15.      Union Police Department (the "Union PD") officers arrived, listened to both narratives, and informed the owner that Mr. Banks could not be removed based on his claims. After this, despite feeling emotionally hurt, harassed, and embarrassed, Mr. Banks and his friends enjoyed playing billiards without further issues that night. However, this targeted discrimination, embarrassment, and harassment have weighed on Mr. Banks' confidence, mental health, and comfort, as it concerns attending social establishments.

16.      On June 16, 2024, Mr. Banks revisited Black Diamond Billiards in the company of his brother to meet friends inside the facility. Mr. Banks relies on a service dog for assistance. The same owner involved in the previous incident was standing outside the business and immediately expressed anger upon seeing Mr. Banks accompanied by his service dog.

17.      The owner declared that Mr. Banks was not allowed to enter with his service animal, asserting that "other patrons may be afraid of dogs" and again claimed that Mr. Banks' "wheelchair would get in others' way." Mr. Banks attempted to inform the owner about ADA laws relevant to his disability and service dog, explaining that he is legally permitted in any area open to the public, and even shared additional details of his disability and the benefits provided by his service dog in attempts to alleviate the owner's concerns. The owner, however, remained upset and repeatedly projected his anger towards Mr. Banks.

18.      Due to the owner's escalating behavior and his renewed threat to call the police, Mr. Banks informed him that he would begin recording the encounter for police review. At this

point, the owner became silent and refused to continue with the conversation.

19.     While waiting for the police, Mr. Banks stated his intention to wait inside the establishment to socialize with friends, emphasizing he would not play billiards or obstruct others. However, the owner was adamant about denying entry. As Mr. Banks neared the doorway, one of the two owners placed his hand on Mr. Banks' shoulder with force to restrict him from entering. Mr. Banks backed away and awaited the arrival of the Union PD.

20.     Upon the police's arrival, and at the owner's request, the Union PD informed Mr. Banks that he was banned from the establishment because the owner claimed Mr. Banks was "disrupting the business."

21.     This intentional discriminatory conduct, including hostile confrontation and physical restriction from entry, has inflicted a significant emotional toll upon Mr. Banks, who has confided these adverse effects on his confidence and mental health to family, close friends, and disability support groups. He has endured targeted discrimination, embarrassment, and harassment, resulting in increased anxiety and social withdrawal, causing severe reluctance to visit social establishments. This profound distress has led to difficulty concentrating at work and school and has impacted his personal relationships.

22.     As such, Mr. Banks, who genuinely desires to return to Black Diamond Billiards to socialize with friends and enjoy the facilities, has effectively been prohibited from the establishment and has not accessed the facility because of this discriminatory treatment and the Defendant's refusal to reasonably accommodate his disability.

## II.    *ELEMENTS & DISCRIMINATORY TREATMENT*

### a)  MR. BANKS HAS A DISABILITY WITHIN THE MEANING OF FEDERAL AND STATE STATUTORY DEFINITIONS.

23.     The ADA, 42 U.S.C. § 12102(1), defines disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. Mr. Banks

is disabled under the ADA because he has a physical disability that requires him to utilize a manual wheelchair for mobility and rely on a service dog to navigate independently and safely. Several of his major life activities are limited as per 42 U.S.C. § 12102(2)(A), including walking, standing, performing manual tasks, bending, lifting, and working. As such, his disability is qualified under federal and state definitions.

24.     Under Titles II and III of the ADA, a service animal is a dog that is individually trained to do work or perform tasks for a person with a disability, and these are working animals, not pets. The work or task must be directly related to the person's disability. Dogs whose sole function is to provide comfort or emotional support do not qualify as service animals under the ADA.

25.     New Jersey law also defines disability very broadly to include any physical disability, infirmity, malformation, or disfigurement caused by bodily injury, birth defect or illness, and any mental, psychological, or developmental disability, and also protects individuals perceived as having such disabilities.

### b) MR. BANKS HAS SUFFERED FROM DISCRIMINATION BASED ON A FAILURE TO REASONABLY ACCOMMODATE.

26.     To maintain a case of discrimination based on a failure to reasonably accommodate, a plaintiff [such as Mr. Banks in this case] must demonstrate that: (1) he suffers from a handicap as defined by the FHAA [or a disability as defined by the ADA and Rehabilitation Act]; (2) the defendant knew or reasonably should have known of the plaintiff's handicap [or disability]; (3) accommodation of the handicap [or disability] 'may be necessary' to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendant refused to make such accommodation (See *Logan v. Matveevskii*, 57 F.Supp3d 234, 256 [S.D.N.Y. 2014]).

27.     Mr. Banks' claim satisfies each element of this standard. The first element of a successful showing of discrimination is satisfied since Mr. Banks' disability meets the

definition of disability under 42 U.S.C. § 12102(1). As discussed above, Mr. Banks suffers from physical impairments that substantially limit several life activities, forcing him to utilize a manual wheelchair and other durable medical equipment (DME), along with the assistance of a trained service animal. He requires the help of his medical equipment and service dog to access the community independently.

28.    Second, Black Diamond Billiards' management, employees, and authorized agents had actual and constructive knowledge of Mr. Banks' disability and access needs. Mr. Banks' use of a wheelchair and the presence of a clearly identified service animal made his disability evident. Furthermore, the owner's prior encounter with Mr. Banks in late 2023 or early 2024, where Union PD affirmed Mr. Banks' right to remain, established clear knowledge. This prior incident clearly established actual and constructive knowledge by Black Diamond Billiards of Mr. Banks' disability, his essential accommodations (including wheelchair and service animal access), and the corresponding legal protections afforded under the ADA.

29.    Additionally, on June 16, 2024, Mr. Banks again explicitly informed the Black Diamond Billiards' owner of ADA laws relevant to his disability and service dog. The ADA permits staff to ask only two questions if a service animal's function isn't obvious: (1) is the dog a service animal required because of a disability; and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task. Therefore, the subsequent refusal of entry, based on invalid reasons such as "fear of dogs" or the "wheelchair getting in the way", establishes a pattern of discriminatory behavior due to Mr. Banks' disability.

30.    The third element of a discrimination claim is successfully satisfied since accommodating 'may be necessary' to afford Mr. Banks an equal opportunity to use and enjoy the facility. It is undisputed that Mr. Banks cannot navigate the community independently

without his wheelchair and service animal. This fact is asserted by his team of doctors, medical professionals, and the State of New Jersey, which acknowledges his disability and provides him with the necessary support. Without reasonable accommodation of his disability, such as allowing service animal access and unrestricted access to the facility, the facts demonstrate that Mr. Banks was unable to access Black Diamond Billiards on terms equal to those of other members.

31.     Finally, it is abundantly clear that Black Diamond Billiards refused to provide the accommodations needed for equal access. Despite knowledge that a patron of Black Diamond Billiards required accommodations to achieve equal access to the facilities, Black Diamond Billiards chose to continually deny Mr. Banks access. Black Diamond Billiards unequivocally refused to provide the necessary accommodations. On June 16, 2024, the owner explicitly denied entry to Mr. Banks because of his service animal and wheelchair.

32.     The Black Diamond Billiards owner's claims of "fear of dogs" and the wheelchair "getting in the way" are not valid reasons for denying access under the ADA. Allergies and fear of dogs are explicitly not valid reasons for denying access or refusing service to people using service animals. A service animal can only be asked to be removed from the premises if: (1) the dog is out of control and the handler does not take effective action to control it; or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

33.     This pattern of intentional refusal to accommodate Mr. Banks satisfies the final element of a prima facie showing of discrimination for failure to accommodate a known disability under New Jersey State law and the standard that courts follow under *Logan v. Matveevskii*, 57 F.Supp 3d 234, 256 [S.D.N.Y. 2014].

**c) MR. BANKS WAS AND CONTINUES TO BE EXCLUDED FROM BLACK DIAMOND BILLIARDS DUE TO CLEAR STRUCTURAL AND POLICY BARRIERS IN VIOLATION OF THE ADA AND ITS IMPLEMENTING REGULATIONS.**

34.    Title III of the ADA, 42 U.S.C. §§ 12181 et seq., and its implementing regulations, 28 C.F.R. Part 36, require businesses that are open to the public to ensure that individuals with disabilities have full and equal access to their facilities, programs, and services. "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" (See 42 U.S.C. § 12182[a]). Under the ADA, covered businesses are required to "make reasonable modifications in policies, practices, or procedures" and to "remove architectural barriers ... where such removal is readily achievable" (See 42 U.S.C. § 12182[b][2][A][ii], [iv]; 28 C.F.R. §§ 36.302, 36.304). For non-compliance, courts have the authority to order "injunctive relief, preventative relief, or such other relief as the court considers appropriate," and prevailing plaintiffs may recover attorneys' fees (See 42 U.S.C. § 12188[a]-[b]; 28 C.F.R. § 36.504.)

**d) BLACK DIAMOND BILLIARDS HAS SIGNIFICANT ACCESSIBILITY BARRIERS IN VIOLATION OF THE ADA AND 28 C.F.R. PART 36 THAT HAVE IMPACTED MR. BANKS.**

35.    As stated above, Defendant has significant barriers that have had a specific and detrimental impact on Mr. Banks. These barriers include, but are not limited to:

   a. Discriminatory "no dogs" policy, or its application to Mr. Banks' service animal, which is a direct violation of the ADA. Entities with a "no pets" policy must modify it to allow service animals into their facilities.

   b. Denial of entry based on invalid reasons, including other patrons' fear of dogs and claims that the wheelchair would "get in the way," which are explicitly not valid bases for denial under the ADA.

   c. Physical restriction from entry, including forcibly placing a hand on Mr.

Banks' shoulder, constituting a direct physical barrier and an overt act of discrimination.

d.   Subsequent banning from the establishment at the owner's request, constituting a severe form of exclusion and discrimination.

e.   Targeted discriminatory actions and harassment, including hostile confrontations, inappropriate remarks, and false claims about business disruption.

f.   Failure to institute or adhere to policies and procedures regarding compliance with the ADA and applicable codes and regulations.

g.   Failure to provide reasonable modifications in policies, practices, or procedures necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

h.   Pattern of discriminatory behavior demonstrating a blatant disregard for Mr. Banks' civil rights and a willful failure to learn from past mistakes.

36.   These ongoing violations and discriminatory practices blatantly contravene federal and state laws, including the ADA and the NJLAD.

**e)   BLACK DIAMOND BILLIARDS AND ITS AGENTS SUBJECTED MR. BANKS TO DISCRIMINATION PURSUANT TO STATE AND FEDERAL LAWS.**

37.   The NJLAD prohibits discrimination and harassment based on disability in any area open to the public. Public accommodations in New Jersey include places like shops, restaurants, entertainment places, and any business or organization that offers goods and services to the public or is open to the public. Under the NJLAD, it is unlawful to refuse, withhold from, or deny to any person the accommodations, advantages, facilities, or privileges of a public place because of a disability.

38.   Due to the clear structural and policy barriers that violate numerous provisions of federal ADA law, Black Diamond Billiards is also in violation of the NJLAD by denying

Plaintiff full and safe access to all of the facilities' benefits, accommodations, and services. This constitutes willful and wanton discrimination under New Jersey law.

39.    In addition to discriminatory policy barriers that excluded Mr. Banks from the facilities, Black Diamond Billiards' employees, personnel, and agents engaged in intentional and discriminatory practices that give rise to both an inference of discrimination, as well as de facto proof that Mr. Banks was forced to suffer from unfavorable remarks, harassment, hostile treatment, unwanted physical touch, and a generally worse service experience than other customers.

### f) BLACK DIAMOND BILLIARDS AND ITS AGENTS' UNWILLINGNESS TO ACCOMMODATE MR. BANKS' NEEDS VIOLATES STATE AND LOCAL HUMAN RIGHTS LAWS.

40.    New Jersey state and local laws define "discriminatory practice" to include a refusal to make reasonable modifications in policies, practices, or procedures when necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities, and a refusal to remove architectural barriers.

41.    Places of public accommodation are required to provide reasonable accommodations to give people with disabilities access to their facilities, goods, and services, unless doing so would impose an undue hardship on their operations. For instance, they may be required to make modifications to buildings, facilities, and equipment to reasonably accommodate people with disabilities, such as ensuring accessible paths of travel (See N.J.S.A. 10:5-4).

42.    In Mr. Banks' case, the refusal to permit his service dog and accommodate his wheelchair, alongside the physical restriction from entry, demonstrates a failure to make necessary modifications and remove barriers to access. Black Diamond Billiards has violated these state and local laws by failing to remove barriers to access and refusing to accommodate Mr. Banks.

**g) MR. BANKS RAISED ACCESSIBILITY CONCERNS AND REPORTED DISCRIMINATION, BUT BLACK DIAMOND BILLIARDS FAILED TO ADDRESS MR. BANKS' ISSUES.**

43.     During both incidents, Mr. Banks attempted to raise his concerns about accessibility and discrimination with the owner. In late 2023 or early 2024, Mr. Banks challenged the owner's claim of interference and explained that he should not be moved without valid cause. On June 16, 2024, Mr. Banks explicitly informed the owner of ADA laws and attempted to share details of his disability to foster understanding.

44.     However, the owner responded angrily, refused to continue the conversation, physically restricted Mr. Banks from entering, and ultimately requested that Union PD ban him from the establishment. These actions demonstrate a blatant failure by Black Diamond Billiards to take remedial action or address Mr. Banks' legitimate concerns.

45.     This discriminatory treatment has caused Mr. Banks significant emotional distress and inconvenience. He was repeatedly subjected to hostile confrontations, denied the ability to socialize with friends in a public place, and experienced physical restriction. Such experiences of stigma, discrimination, and access denials are commonly reported by service dog holders and infringe upon their civil liberties, contributing to social marginalization and stigmatization.

46.     The cumulative impact of these negative public experiences has led to increased social isolation and burnout, potentially compromising health and safety, directly contradicting the spirit and goals of the ADA. This deeply and adversely impacts Mr. Banks since he has been a patron of Black Diamond Billiards and chose this establishment as a place to socialize with friends and enjoy recreational activities.

47.     Mr. Banks continues to suffer from this discrimination and desires to address this matter expeditiously.

48.     The refusal to accommodate service animal access, architectural barriers, and

the physical restriction from entry constitute discriminatory treatment.

49.     The Defendant's management and staff had actual and constructive knowledge of the Plaintiff's disability and necessity for service animal assistance, having been explicitly informed of ADA requirements and having been previously corrected by law enforcement.

50.     The refusal to provide reasonable accommodations and the failure to remove policy barriers prevent Plaintiff from accessing the facility on equal terms as other patrons, satisfying the elements of a prima facie showing of discrimination based on a failure to accommodate a known disability.

51.     Defendant also engaged in targeted discriminatory actions and harassment, including hostile confrontations, physical restriction, and ultimately banning Plaintiff from the establishment.

52.     As a result of the discriminatory treatment and policy barriers, Plaintiff has been effectively prohibited from using Black Diamond Billiards since June 16, 2024, resulting in a deterioration of his mental health, increased anxiety, social withdrawal, and difficulty concentrating at work and school.

53.     The barriers to access within the Subject Property continue to exist and deter Plaintiff from utilizing the facilities.

## CAUSES OF ACTION

### I.    *VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT*

54.     Plaintiff repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55.     Title III of the ADA, 42 U.S.C. § 12182(a), provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

56.     The Defendant's physical locations are public accommodations within the

meaning and definition of Title III of the ADA, 42 U.S.C. § 12181(7).

57.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity (See 42 U.S.C. § 12182[b][1][A][i]).

58.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations, which are equal to the opportunities afforded to other individuals (See 42 U.S.C. § 12182[b][1][A][ii]).

59.    Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination also includes, among other things:

60.    [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

61.    The ADA and 2004 ADA/ABA Accessibility Guidelines for Buildings and Facilities (36 CFR Part 1191, Appendices B and C) along with 28 CFR Part 36, Subpart D, the New Construction and Alterations portion of Title III (all hereinafter referred to as the "Accessibility Standards" or "ADAAG") dictate that property owners and operators of

commercial premises being used as "commercial establishments" are responsible for complying with these Federal Accessibility Standards.

62.    Defendant has discriminated, and continues to discriminate, against Plaintiff due to his disability by denying him full and equal access to and full and equal enjoyment of goods, services, facilities, privileges, advantages, and/or accommodations at Black Diamond Billiards, in violation of the ADA and its implementing regulations.

63.    The Defendant's facility is legally required to be (but is not) in compliance with the ADA; specifically, but not limited to:

a. Failure to modify a "no pets" policy to allow service animals, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.302(a), (c).

b. Denial of access to a patron with a service animal based on the fear or allergies of others, which are explicitly not valid reasons to exclude a service animal, in violation of 28 C.F.R. § 36.302(c)(1)-(2) and DOJ Guidance "ADA Requirements: Service Animals."

c. Failure to permit individuals with disabilities using wheelchairs or other mobility devices full and equal enjoyment of the facilities, in violation of 42 U.S.C. § 12182(a) and 28 C.F.R. §§ 36.201(a), 36.311.

d. Facilitating isolation and segregation of individuals with disabilities from other patrons, in violation of 42 U.S.C. § 12182(b)(1)(B) and 28 C.F.R. § 36.203.

e. Implementing physical restrictions from entry on individuals with disabilities, constituting a direct barrier to access and a failure to remove architectural barriers, where readily achievable, in violation of 42 U.S.C. § 12182(a), (b)(2)(A)(iv) and 28 C.F.R. § 36.304(a).

f. Failure to institute or adhere to policies and procedures regarding

compliance with the ADA and applicable codes and regulations, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. §§ 36.204, 36.302(a).

g.  Failure to modify self-imposed policy constraints that compromised the Plaintiff's safety, well-being, and independence, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. §§ 36.204, 36.302(a).

h.  Failure to train staff, agents, and managers on ADA requirements regarding service animals and individuals with disabilities, resulting in non-compliance with 28 C.F.R. §§ 36.201(a) and 36.302(c).

i.  Failure to treat patrons with disabilities in the same manner as other patrons, in violation of 42 U.S.C. § 12182(a), (b)(1)(A) and 28 C.F.R. § 36.202.

j.  Failure to provide compliant grab bars in the restrooms, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 604.5, 609.

k.  Failure to provide compliant insulation or enclosure of pipes in the restrooms, in violation of 28 C.F.R. § 36.304(b) and ADAAG § 606.5.

l.  Failure to provide a compliant toilet seat height, to configure necessary toilet partitions, to provide proper urinals, to install proper flush controls, and to install toilet compartments that provide required clearance for adequate maneuvering, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 213, 309, 603, 604, 605.

m.  Failure to provide at least one restroom mirror with the bottom edge of the reflecting surface mounted within the required reach range for wheelchair users, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 213, 603.

n.  Failure to position and mount paper towel dispensers and other restroom accessories within accessible reach ranges while maintaining safety, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 308, 309, 606.

o.  Failure to provide an accessible lavatory and sink in the restroom, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 308, 309, 606.

p.  Failure to provide an accessible service counter at the entrance, in violation of 28 C.F.R. § 36.304(b) and ADAAG § 904.4.

q.  Failure to ensure that common fixtures such as light switches, electrical outlets, thermostats, fire alarm pull stations, automatic door-opener push buttons, drinking fountains, coat hangers, card readers, billiards tables, and consumer-operated equipment are located and configured so that operable parts are within accessible reach ranges and usable by individuals with disabilities, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 205, 308, and 309.

r.  Failure to provide accessible routes to all levels of the premises, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 206, 402, 403.

s.  Failure to provide accessible door handles throughout the premises, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 309, 404.

t.  Failure to provide and maintain accessible aisles throughout the premises of at least 36" in width, in violation of 28 C.F.R. §§ 36.211, 36.304(b), and ADAAG §§ 402, 403.

u.  Failure to provide signage addressing people with disabilities, informing them that accessible services are provided and where the services are located, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 216, 703.

v.  Required directional and informational signage is not provided, in violation of 28 C.F.R. § 36.304(b) and ADAAG §§ 216, 703.

w.  Failure to institute or adhere to policies and procedures regarding compliance with the ADA and applicable codes and regulations, in violation

of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. §§ 36.204, 36.302.

    x.   Failure to modify self-imposed policy constraints that compromised the Plaintiff's safety, well-being, and independence in violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. §§ 36.204, 36.302.

64.    This is not intended to be a complete list of ADA violations at Black Diamond Billiards. Additional violations may be set forth within the Plaintiff's expert disclosures and report, following inspections made of the location pursuant to Fed. R. Civ. 34.

65.    To date, the barriers and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

66.    Remediating the ADA violations set forth herein is both technically feasible and readily achievable.

67.    Plaintiff intends to visit Black Diamond Billiards in the future (upon the Defendant's compliance with an Order of this Court requiring Defendant to remedy the ADA violations at issue) in order to utilize all of the goods, services, facilities, privileges, advantages, and/or accommodations offered. However, in light of his disabilities, unless and until the facility is brought into full compliance with the ADA and its implementing regulations, Plaintiff will remain unable to fully, properly, and safely access Black Diamond Billiards and/or the goods, services, facilities, privileges, advantages, and/or accommodations offered therein.

68.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief, including but not limited to: (1) an Order requiring Defendant to alter the policies and premises to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA; (2) an Order mandating the completion of company-wide compliance training on federal and state anti-discrimination statutes and best

practices; and (3) an Order to close the Subject Facility until the requisite modifications and trainings are completed.

## II. _VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (FAILURE TO PROVIDE ACCOMMODATIONS)_

69.    Plaintiff repeats the allegations contained in the preceding Facts section (Compl. ¶¶ 12-22) and incorporates them as Paragraph 68 of this Count II as though they were fully set forth at length herein.

70.    The NJLAD provides:

> All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, liability for service in the Armed Forces of the United States, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right (See N.J.S.A. 10:5-4).

71.    Defendant is in violation of the NJLAD, N.J.S.A. 10:5-1 et seq., and N.J. Admin. Code § 13:13-4 et seq., by denying Plaintiff full and safe access to all of the facility's benefits, accommodations, and services (Compl. ¶¶ 70-71).

72.    The Plaintiff's physical disability and his reliance on a service animal were the bases that caused Defendant to deny him full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations at its public accommodation, and Defendant failed to provide reasonable modifications and accommodations, as detailed in the preceding paragraphs (Compl. ¶¶ 9-11, 13-14, 17, 19, 22, 31, 35a-g, 61-62).

73.    N.J. Admin. Code § 13:13-4 et seq., further outlines unlawful practices at places of public accommodation and implements the provisions of the NJLAD as they pertain to unlawful discrimination against people with disabilities.

74.     The NJLAD further imposes civil penalties, in addition to any other relief or affirmative action provided by law, on any person who interferes with or denies the access of a person with a disability, accompanied by a service or guide dog, to any public facility… (See N.J.S.A. 10:5-29.11).

75.     The Defendant's unlawful discriminatory conduct constitutes willful and wanton violations of the NJLAD for which Plaintiff is entitled to an award of compensatory and punitive damages.

76.     Under the NJLAD, punitive damages are available where a defendant's conduct is willful, wanton, malicious, or in reckless disregard of the rights of individuals with disabilities (See N.J.S.A. 2A:15-5.12).

77.     The egregious nature of the denial of access in this matter, including physical restriction from entry and banning from the establishment, demonstrates that the discriminatory conduct was not a mere oversight but a knowing disregard of well-established accessibility obligations. The facts readily support a finding of recklessness or conscious indifference.

78.     Defendant has shown a blatant disregard for Mr. Banks' civil rights and a willful failure to learn from past mistakes, exhibiting a pattern of discriminatory behavior even after being corrected by law enforcement.

79.     As a direct and proximate result, the Plaintiff's rights were offended under the NJLAD for discrimination on the basis of a disability and failing to provide reasonable accommodations, causing Plaintiff to suffer substantial emotional distress; increased anxiety; social withdrawal; difficulty concentrating at work and school; loss of self-esteem; emotional trauma and distress; and other harm, pain, and suffering (Compl. ¶¶ 15, 21-22).

80.     Plaintiff brings this Count as against Defendant, jointly, severally, and in the alternative for violations of the NJLAD and seeks compensatory damages, emotional distress damages, interests, punitive damages, attorney's fees and costs, and all other such relief that a

judge or a jury may deem just and appropriate under the NJLAD.

### III.   *VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (FAILURE TO ENGAGE IN GOOD FAITH TO ACCOMMODATE)*

81.    Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein, particularly those set forth in the Facts section (Compl. ¶¶ 12-22).

82.    The purpose of the NJLAD and ADA's reasonable accommodation requirement is to enable individuals with disabilities to fully and equally enjoy the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

83.    To determine what appropriate accommodation is necessary, the proprietor of a public accommodation, when faced with a request or an obvious need for accommodation, must engage in a good-faith effort with the individual seeking accommodation to identify and implement reasonable modifications.

84.    Plaintiff informed Defendant of his disability, his use of a service animal, and his need for access, and attempted to explain ADA laws relevant to his disability and service animal (Compl. ¶¶ 14, 17, 29, 43).

85.    Defendant was aware of the Plaintiff's disability and his need for accommodations, including access with his wheelchair and service animal (Compl. ¶¶ 28, 29).

86.    Despite being aware of the Plaintiff's disability and his requests and attempts to inform Defendant of his rights and needs for accommodation, Defendant failed to make a good-faith effort to accommodate Plaintiff. Instead, Defendant refused entry, engaged in hostile confrontations, and physically restricted Plaintiff (Compl. ¶ 17-20, 31, 44).

87.    Reasonable accommodations, such as allowing access to using a service animal and not restricting wheelchair use, could have been provided, but for the Defendant's lack of good faith (Compl. ¶¶ 30-31).

88.    Plaintiff has suffered damages as a direct and proximate consequence of

Defendant's failure to engage in good faith efforts to accommodate him (Compl. ¶¶ 15, 21-22).

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages, emotional distress damages, attorney's fees, court costs, costs of suit, interest, and such other and further relief as the Court deems just and equitable.

## IV.    *VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (RETALIATION)*

89.    Plaintiff repeats the allegations contained in the preceding Facts section (Compl. ¶¶ 12-22) and incorporates them as Paragraph 1 of this Count III as though they were fully set forth at length herein.

90.    Plaintiff engaged in protected activities by asserting his rights under disability laws, informing Defendant of ADA requirements, challenging discriminatory actions, and attempting to explain the need for reasonable accommodations (Compl. ¶¶ 14, 17, 29, 43).

91.    After Plaintiff engaged in these protected activities, Defendant retaliated against him by continuing to deny him access, physically restricting his entry, banning him from the establishment, and engaging in hostile confrontations, demonstrating a pattern of discriminatory behavior and a willful failure to learn from past mistakes (Compl. ¶¶ 14, 18-20, 35c-e, 35h, 44, 51, 76).

92.    The egregious nature of the denial of access in this matter, including physical restriction from entry and banning from the establishment, demonstrates that the discriminatory conduct was not a mere oversight but a knowing disregard of well-established accessibility obligations, and constitutes recklessness or conscious indifference to the Plaintiff's rights (Compl. ¶¶ 75-76).

93.    As a direct and proximate result, the Plaintiff's rights were offended under the NJLAD for retaliation, causing Plaintiff to suffer substantial emotional distress; increased anxiety; social withdrawal; difficulty concentrating at work and school; loss of self-esteem; emotional trauma and distress; and other harm, pain, and suffering (Compl. ¶¶ 15, 21-22).

WHEREFORE, Plaintiff brings this Count as against Defendant, jointly, severally, and in the alternative for violations of the NJLAD and seeks compensatory damages, emotional distress damages, interests, punitive damages, attorney's fees and costs, and all other such relief that a judge or a jury may deem just and appropriate under the NJLAD.

## V. *COUNT IV – VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (HARASSMENT AND HOSTILE ENVIRONMENT)*

94.    Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein, particularly those set forth in the Facts section (Compl. ¶¶ 12-22).

95.    The aforesaid conduct by Defendant, including hostile confrontations, inappropriate remarks, physical restriction, and false claims, constitutes illegal harassment of Plaintiff on the basis of his disability (Compl. ¶ 13-15, 17-21, 35e).

96.    Such conduct was severe and/or pervasive.

97.    Such conduct was and is offensive to a reasonable person with a disability, including Mr. Banks, and to a reasonable person associated with a disabled person (e.g., Mr. Banks' service animal or his brother).

98.    Such conduct was offensive to Plaintiff (Compl. ¶¶ 15, 21).

99.    By such conduct, Defendant perpetuated an illegal hostile environment on the basis of disability at Black Diamond Billiards (Compl. ¶¶ 22, 35e).

100.    Plaintiff has suffered, continues to suffer, and will in the future suffer irreparable loss and injury, including but not limited to, severe emotional distress with physical manifestations, humiliation, embarrassment, strain on personal relationships, loss of enjoyment of social and public accommodation activities, and unlawful deprivation of his statutorily protected rights to exercise and enjoy equal treatment under the laws in places of public accommodation without regard to disability or the association with a person with a disability (Compl. ¶¶ 15, 21-22).

101.    Absent remedial relief requiring Defendant to rectify the violations of law set forth herein, including proper policies and training of its owners, managers, and employees, other individuals with disabilities and those associated with them will be denied access to Black Diamond Billiards, and/or be treated in a discriminatory manner, when compared with other, non-disabled patrons (Compl. ¶¶ 35f, 62i).

102.    The aforesaid conduct on the part of Defendant, including their failure and refusal to rectify the same after ample notice and opportunity to correct their illegal actions, constitutes willful, egregious conduct giving rise to punitive damages (Compl. ¶¶ 35h, 75-76).

## VI.    *COUNT VI – VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (DISCRIMINATION BASED ON REAL OR PERCEIVED DISABILITY)*

103.    Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein, particularly those set forth in the Facts section (Compl. ¶¶ 12-22).

104.    For claims of disability discrimination, a plaintiff must show that: (a) he is a disabled person within the meaning of the statute; (b) he was qualified to fully and equally enjoy the goods, services, facilities, privileges, advantages, or accommodations of the public accommodation, with or without reasonable accommodations; and (c) he suffered an adverse action (such as denial of access or service) as a result of discrimination.

105.    Plaintiff has a disability within the meaning of the NJLAD (Compl. ¶¶ 23-25).

106.    Defendant was aware of the Plaintiff's disability, or perceived him as having a disability that required accommodation (Compl. ¶¶ 13, 17, 28-29).

107.    Because Plaintiff required an accommodation due to his disability, or because Defendant perceived Plaintiff as an individual with a disability, Defendant denied Plaintiff access and service to Black Diamond Billiards (Compl. ¶¶ 13, 17, 19-20, 31).

108.    As a direct consequence of this discrimination based on his real or perceived

disability, Defendant denied Plaintiff access to and services (Compl. ¶¶ 22).

109.    Plaintiff suffered damages because of the Defendant's unlawful denial of access and services (Compl. ¶¶ 15, 21-22).

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, emotional distress damages, attorney's fees, court costs, costs of suit, interest, and such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

110.    Plaintiff demands compensatory damages in an amount to be determined by proof, but not less than one hundred thousand dollars ($100,000), including all applicable statutory damages and fines, for violations of the Plaintiff's civil rights provided by the NJLAD, including compensatory damages, plus punitive damages pursuant to N.J.S.A. 2A:15-5.12.

111.    Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant the Plaintiff's injunctive relief; including an Order requiring Defendant to alter the policies and premises to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA and the NJLAD, and closing down the Subject Facility until the requisite modifications are completed.

112.    The Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law.

WHEREFORE, Plaintiff hereby demands judgment against Defendant and requests the following injunctive and declaratory relief:

a.    The Court to declare that the premises owned, operated, leased, controlled, and/or administered by Defendant are in violation of the ADA and the NJLAD;

b.    The Court to enter an Order requiring Defendant to alter its policies and facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA and by the NJLAD;

c.   The Court to enter an Order directing Defendant to evaluate and neutralize its policies, practices, and procedures toward persons with disabilities, for such reasonable time as to allow Defendant to undertake and complete corrective procedures to the premises;

d.   The Court to enter an Order requiring mandatory staff training on compliance with the ADA, specifically regarding service animals and individuals with disabilities;

e.   The Court to enter a Permanent Injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), directing Defendant to take all steps necessary to remove the policy, physical, and architectural barriers described above and to bring its facility into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facility is fully accessible to, and independently usable by, individuals who use wheelchairs and/or service animals, and which further directs that the Court shall retain jurisdiction for a period to be determined after the Defendant's facility comes into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause them to remain fully compliant with the law;

f.   The Court to enter an Order requiring the closure of the Defendant's facility until such time as the location has been brought into full compliance with applicable federal and state laws, including the ADA and NJLAD;

g.   The Court to award compensatory damages, including all applicable statutory damages, fines, and punitive damages to Plaintiff;

h.   The Court to award reasonable attorney fees, all costs (including but not limited to court costs, expert fees, etc.), and other expenses of suit to Plaintiff under both the NJLAD § 10:5-27.1, and the ADA under 42 USC § 12205; and

     i.    The Court to award such other and further relief as it deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in the United States District Court for the District of New Jersey.

## DISCOVERY RESERVATION

Plaintiff hereby reserves the right to serve Form C interrogatories upon Defendant pursuant to R. 4:17-1(b) at the appropriate stage of discovery; and further reserves the right to serve interrogatories, requests for production of documents, and notices of deposition pursuant to the Federal Rules of Civil Procedure or applicable State Rules, at the appropriate stage of this litigation.

Dated       January 12, 2026      Respectfully Submitted,
           Brooklyn, New York

Vincent Miletti, Esq. (# 078322013)
**MILETTI LAW, P.C.**
153 West End Avenue, Suite 2A
Brooklyn, New York 11235
(609) 353-6287
VMiletti@MilettiLaw.com
*Attorney for Plaintiff*

TO:    **GND LLC**
       **d/b/a BLACK DIAMOND BILLIARDS**
       1767 US-22
       Union, New Jersey 07083
       *Defendant; Attorney to be Noticed*

## <u>VERIFICATION</u>

I, JASHAR BANKS, hereby attest, affirm, verify, depose, and say that I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true to my own personal knowledge, information, and belief, except as to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

_Jashar Banks_

JASHAR BANKS

Sworn to me, the undersigned, before
the 12th day of January, 2026.

_____
NOTARY PUBLIC

VINCENT MILETTI, ESQ.
Notary Public - State of New York
No. 02MI6380651
Qualified in Kings County
My Commission Expires 09/10/2026